PRATT, J., concurred; DYKMAN, J., not sitting.

Judgment affirmed, with costs.

---

In the Matter of the Judical Settlement of the Account of HENRY B. BOLTON and Another, as Executors, etc., of ANN BOLTON, Deceased.

*Accounting — loss on sale of property — moneys paid at request — rents of machinery — rents not collected by request — when executors are not bound to collect a judgment — one executor of two estates, indebted one to the other — accounts between a testatrix and her executors.*

Executors are not chargeable with even a heavy loss on the sale of property of their decedent when the sale is at public auction, fairly made, and competition is shown to have existed at the sale.

At the time of a testatrix's death she owned premises and machinery thereon, which were then leased to parties named in her will as her executors and an adopted son; subsequently a large portion of the machinery was destroyed by fire and was replaced by the lessees on their own individual account. Thereafter the machinery of the estate was sold by the executors at public auction for $592.82. In proceedings in the Surrogate's Court for the settlement and allowance of the executors' accounts, the fairness of the sale was questioned, but it was shown that the sale was at public auction, that many people were present, and that there was competition at the sale, which was found by the surrogate to have been fairly conducted. The machinery was mainly bought by the adopted son of the testatrix, and it was used afterward, with the firm

machinery, in a new business by the executors and the adopted son of the testatrix. The executors, when testifying before a commissioner, had proven the value of the entire machinery to be upwards of $90,000, and at this value put upon the machinery, separating the new from the old, the estate machinery was worth upwards of $50,000. There being no evidence that the property sold was of greater value than the amount paid for it, the sale was sustained by the surrogate.

*Held*, that there is nothing upon which an appellate court could say the finding was erroneous.

Money paid by members of a firm to third persons at the request of a testatrix, who by her will appointed the members of such firm her executors, is properly allowed them upon their accounting as such executors.

Where machinery claimed by an estate is taken by a third party under a claim of title, and an arrangement is thereafter made by which the machinery is secured to the estate, the executors are not responsible for the rent thereof from the time of such taking until the making of such arrangement, although the machinery was used by the firm of which they were members while such machinery was in the possession of such third party.

Where a testatrix requests her tenants not to collect rent of certain of their subtenants, but to charge her with the amount of the same, such tenants, upon their accounting as executors of the estate of the testatrix, are properly credited with the amount of the rent reserved in their lease with such sub-tenants and not collected by them.

Where a mortgage is given by a husband to a party by whom it is assigned to the wife, without consideration, merely to protect the title to the land as against creditors of the husband, a deficiency judgment recovered upon the foreclosure of the mortgage by the wife against the executors of her husband's estate, is not a debt which the executors of the wife can or are bound to collect.

Though the same person be executor of two estates, one of which is indebted to the other, upon his accounting as executor of the estate of the creditor he cannot be charged with moneys shown to have been paid to him as executor of the indebted estate.

An account between a woman and the firm who acted as her agents, two of the members of which firm were afterwards appointed her executors, was examined and settled by her without any voucher being produced in support thereof.

*Held*, that upon the accounting of her executors, the account was good evidence against the deceased.

APPEAL by Mary A. Littlewood and Sarah L. Myers, two of the devisees and legatees named in the last will and testament of Ann Bolton, deceased, from a decree entered in the office of the surrogate of the county of Westchester on the 11th day of November, 1892, judicially settling and allowing the accounts as adjusted, of the executors of Ann Bolton, deceased.

Ann Bolton died in September, 1892, leaving a will, and naming therein as her executors, Henry B. Bolton and Thomas Bolton. Her husband, Thomas Bolton, Sr., died in January, 1879.

The Bronx Company, a copartnership composed of the two executors named in the will of the testatrix, and William H. Birchall, the adopted son of the testatrix, acted as agents and bankers for the testatrix from March, 1880, until the time of her death.

The evidence tended to show that during her lifetime, at her request, the Bronx Company paid various sums to Mrs. Leggett, J. L. Wells and J. W. Colwell.

It was shown upon the accounting of the executors, in the Surrogate's Court, that the testatrix leased to the Bronx Company a certain part of her real estate, including certain machinery, which lease was to expire on the 1st day of March, 1895. While the lease was still in force, the city of New York acquired title to these premises, and in 1889, a final order was entered, confirming the taking of the property. The executors, as such, presented proofs to the commissioner appointed to fix the damages, who made an award, and the Bronx Company still continued to occupy said premises, with the machinery, and thereafter the executors claimed the machinery, but they were unable to remove it, as the city authorities took the position that the value of the machinery having been proved upon the condemnation proceedings, it was virtually a fixture, and as such, passed with the real estate. Shortly before its sale, an arrangement was made whereby the estate obtained the machinery.

The rents of the coal yard were not collected by the Bronx Company, during the lifetime of the deceased, from Birchall & Son, at the request of the deceased. The property covered thereby was leased, with other property, by the deceased to the Bronx Company. The Bronx Company credited the deceased, in their accounts, with the full amount of the rent, and charged her with the rent of the coal yard property, which, at her request, they refrained from collecting from Birchall & Son.

The judgment recovered February 11, 1880, by the deceased against Henry B. Bolton, as executor of Thomas Bolton, was upon the foreclosure of a mortgage given without consideration, by Thomas Bolton, deceased, to William H. Birchall, and by him assigned, without consideration, to Ann Bolton; which mortgage

was intended to be used to protect the title of said Thomas Bolton, deceased, to the real estate covered thereby, and which he devised to his wife, Ann Bolton. Such judgment was recovered in a suit to protect said title, and the deficiency was not a *bona fide* debt due to Ann Bolton, deceased, from said Thomas Bolton, deceased.

It was also shown that one E. Brooks left a legacy to the husband of the testatrix, of whose estate, Henry B. Bolton, one of the executors of testatrix, was the executor, and that such legacy, or money on account thereof, was in the possession of the Bronx Company, and that the Bronx Company kept an account of their dealings with the testatrix, which accounts she had opportunities of examining.

*James R. Marvin*, for the appellant.

*Alex. Thain*, for the respondent.

BARNARD, P. J.:

Ann Bolton died in 1882. She owned at her decease real estate in Bronxville, Westchester county, N. Y. The two executors and Wm. N. Birchall, an adopted son, held a lease from the deceased for these premises for ten years from March 1, 1880, at a yearly rent of $4,500. On these premises the lessees had carried on a bleaching business. There was machinery on the premises which went with the land. The city of New York took the land for public uses in 1889. In 1887 a large part of the machinery was destroyed by fire, and the lessees replaced this machinery on their own account. The executors sold the machinery of the estate at public auction in August, 1891, for $592.82. It was a serious question on the trial whether this sale was fair. The property was mainly bought at this sale by the adopted son of deceased, William N. Birchall, and it was used afterwards with the firm machinery proper in a new premises at West Fordham, by the executors and Birchall, as partners. The executors, before the commissioner, had proven the value of the entire machinery proper at upwards of $90,000.

At the value put on the machinery, and separating the new from the old, the estate machinery was worth upwards of $50,000. On the other hand, the old machinery had to be sold separate. It was sold at public auction where there were many people, and there

was competition shown on the sale. The value before the commissioner was of an entire equipment of a business. The detached machinery would of necessity be so much reduced in value as to call for a very large loss. The surrogate has found the sale to have been fair and that under the proof there was no evidence that it was of greater value than was paid for it. There is nothing upon which an appellate court can say the finding is erroneous. Second-hand machinery which has been through a fire, and is only made useful by additions which could not be sold with it, is of not much use, except in the same business and to those who own the new part, which give any values to it. The money paid Mrs. Leggett, J. L. Wells and J. W. Colwell was properly allowed; they were paid in the lifetime of testatrix, at her request, by the firm. The rent of the machinery after the land was taken was properly disallowed. It was, probably, property of the city of New York. The heirs seem to have got an award for it and then claimed the machinery. It was only by an agreement with the city that the estate got the machinery, and that was just before the sale of it by the executors. The rents of the coal yard were properly allowed. This yard was rented to the bleaching firm, and at the request of deceased the rents from it were not collected by the firm. She should pay the rents not collected at her request. The mortgage given by Thomas Bolton, the elder, to Birchall, and by him assigned to Ann Bolton, was given merely to protect the title to the land as against creditors of Thomas Bolton. The deficiency on the foreclosure by Ann Bolton against her husband's executors is not a debt which the executors of Ann Bolton either could or were bound to attempt to collect.

The executors of Ann Bolton cannot be made chargeable with the legacy of E. Brooks to Thomas Bolton, senior. The elder Bolton's estate had been settled and the items had no proper place in this estate. The account between the firm who acted as agents of Mrs. Bolton in her lifetime, was good evidence as against the deceased when examined and settled by her, without other voucher.

The decree of the surrogate should, therefore, be affirmed, with costs.

PRATT, J., concurred.

Decree affirmed, with costs.